## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLY FINANCIAL INC. | CIVIL ACTION NO: |
| Plaintiff | **COMPLAINT** |
| v. | |
| THE CITY OF NEW BEDFORD and SOUTH COAST TOWING INC., | |
| Defendants | |

Plaintiff, Ally Financial Inc. alleges as follows:

1.     Plaintiff brings this action to remedy a deprivation of its long-settled and fundamental rights to be free from unreasonable seizures and to due process of law under the United States Constitution.  It is beyond debate that the government cannot deprive Plaintiff (or anyone) of property by unreasonable seizure and/or without first providing for notice and a hearing.  Yet, that is exactly what occurred here, and exactly what is sanctioned by an outdated, facially unconstitutional Massachusetts State statute, which does not recognize that a duly perfected security interest and a lien in a vehicle is a constitutionally protected property right.  Here, Defendants seized, detained without warrant or exception to the warrant requirement and disposed of a motor vehicle in which Plaintiff held a duly perfected security interest and a lien without notice or a hearing, thereby extinguishing Plaintiff's lien and property interest.  Plaintiff, therefore, brings this declaratory judgment/civil rights action pursuant to 42 U.S.C. §1983 and

1

§1988 for deprivation of Plaintiff's rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

## JURISDICTION and VENUE

2.      Jurisdiction is conferred on this Court by 28 U.S.C. §§1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in the Court for all suits brought pursuant to 42 U.S.C. §1983.

3.      Jurisdiction is conferred on this Court by 28 U.S.C. §1331 because the cause of action rises under the Constitution and laws of the United States.

4.      The supplemental jurisdiction of the District Court is invoked pursuant to 28 U.S.C. §1367 for inter-related state law claims which arise from the occurrences giving rise to the Federal claims and which have a common nucleus of operative fact.

5.      Venue lies in the Court pursuant to 28 U.S.C. §1391.

## PARTIES

6.      Plaintiff Ally Financial Inc. ("ALLY") is a corporation organized and existing by virtue of laws of the State of Delaware and the holder of the duly perfected and recorded lien and security interest in a 2013 GMC Sierra, Vehicle Identification Number 3GTP2VE73DG210816 ("The Subject Vehicle").  ALLY's regular business includes providing financing for the purchase of automobiles.

7.      Defendant The City of New Bedford  (hereinafter "NEW BEDFORD ") is a municipal corporation organized and existing under the laws of the Commonwealth of Massachusetts.

2

8.      Defendant, South Coast Towing Inc., (hereinafter "SOUTH COAST") is a domestic for profit corporation with an usual place of business at 847 Church Street, New Bedford MA.

## INTRODUCTION

9.      NEW BEDFORD and SOUTH COAST summarily deprived ALLY of its rights in The Subject Vehicle when NEW BEDFORD and SOUTH COAST seized The Subject Vehicle pursuant to its police powers, detained it without notice to ALLY and without a warrant or exception to the warrant requirement and then disposed of it pursuant to Massachusetts G.L.c. 255, §39A without notice to ALLY and without affording ALLY the opportunity for a hearing with respect for the legitimacy of these actions, either before or after their occurrence.

10.     Massachusetts G.L.c. 255, §39A effectuates the Commonwealth's interest in enforcing traffic laws and in protecting the public from hazardous street conditions. The statute provides a means for the state to compensate private parties who assist the state by towing and storing vehicles at the direction of police. The statute has, however, fallen out of step with modern developments in constitutional law which confirm that a duly perfected security interest and lien in a vehicle is a constitutionally protected property right. [1]

11.     Massachusetts G.L.c. 255, §39A is unconstitutional on its face because it fails to require that the holder of a duly perfected security interest and lien in a vehicle is entitled to notice

---

[1] G.L. c. 255, section 39A governs lien enforcement for towing and storage charges for vehicles towed from the scene of an accident by order of the state or local police or by order of the registry of motor vehicles official. G.L. c. 159B section 6B however, establishes a carrier's lien for storage and for towing for all police/public authority ordered tows and provides that the lien for both types of charges for all police/public authority tows may be enforced under G.L. c. 255 section 39A.

and an opportunity to protect its rights. The statute therefore authorizes a seizure and detention without a warrant or exception to the warrant requirement, as well as the sale and concomitant destruction of the property interests of the secured party holding a recorded lien against the affected vehicle (by extinguishment of the lien) without any notice to such lienholder or any opportunity to be heard.

12.     The summary deprivation of ALLY's interest occurred in furtherance of NEW BEDFORD and SOUTH COAST's standard practices for taking custody of vehicles in enforcing traffic laws and in protecting the public from hazardous street conditions in order to enforce a parking ban due to a snow emergency as part of NEW BEDFORD and SOUTH COAST'S standard practices for detaining and disposing of vehicles.

13.     NEW BEDFORD and SOUTH COAST violated ALLY's rights to Procedural Due Process because NEW BEDFORD and SOUTH COAST have no procedures whereby a party with a security interest or lien in a seized vehicle is afforded the opportunity for a hearing before an impartial decision-maker with adequate notice, where the interested person can protect its security interest or lien by challenging the seizure, detention, or disposal of the impacted vehicle.

14.     NEW BEDFORD and SOUTH COAST violated ALLY's rights to be free from unreasonable seizures and to Procedural Due Process when they failed to give ALLY any notice of the initial seizure and then detained and disposed of The Subject Vehicle without providing ALLY with constitutionally adequate notice of procedures for the recovery of The Subject Vehicle or protection of ALLY's property interests in The Subject Vehicle.

## **FACTS COMMON TO ALL COUNTS**

4

15.     On or about May 9, 2020, ALLY obtained a purchase money security interest and lien in The Subject Vehicle. A copy of the Retail Installment Sales Contract is attached hereto and marked Exhibit "A".

16.     On May 9, 2020, The Subject Vehicle was officially titled in the state of South Carolina with Jose Miguel Padilla recorded as the owner and Ally Financial (ALLY) recorded as the first priority lien holder. A copy of the South Carolina electronic title is attached hereto and marked Exhibit "B".

17.     On December 16, 2020 NEW BEDFORD and SOUTH COAST took possession and custody of The Subject Vehicle pursuant to NEW BEDFORD's police officers acting in the course of their duties as law enforcement offices.

18.     On or about December 16, 2020, NEW BEDFORD, through its police officers acting in the cause of their duties as law enforcement officers, and pursuant to laws enacted to further official state interests, directed SOUTH COAST to tow and detain The Subject Vehicle.

19.     On or about December 16, 2020, SOUTH COAST towed The Subject Vehicle and retained The Subject Vehicle on behalf of NEW BEDFORD  as part of its standard practice to tow vehicles in order to enforce a parking ban due to a snow emergency.

20.     NEW BEDFORD and SOUTH COAST did not notify ALLY that The Subject Vehicle had been towed.

21.     NEW BEDFORD and SOUTH COAST did not, thereafter, return The Subject Vehicle to ALLY or anyone else.  Instead, NEW BEDFORD authorized its agent SOUTH COAST to detain and dispose of The Subject Vehicle pursuant to Massachusetts G.L.c. 255, §39A.

22.     NEW BEDFORD and SOUTH COAST did not notify ALLY that NEW BEDFORD authorized SOUTH COAST to detain and dispose of The Subject Vehicle.

23.     NEW BEDFORD did not ensure that its agent SOUTH COAST, notified ALLY that NEW BEDFORD had authorized the towing, detention and disposal of the Subject Vehicle.

24.     On or about May 10, 2021, NEW BEDFORD and its agent, SOUTH COAST sold The Subject Vehicle and The Subject Vehicle was retitled through the Massachusetts Department of Transportation with ALLY's lien not recorded on said title.

25.     Under Massachusetts law the sale pursuant to Massachusetts G.L.c 255, §39A and subsequent retitling extinguished ALLY's property interest in The Subject Vehicle.

26.     At no time prior to the sale or retitling of The Subject Vehicle did NEW BEDFORD and SOUTH COAST or any person provide any notice to ALLY relating to The Subject Vehicle.

27.     NEW BEDFORD's use of SOUTH COAST to accomplish its law enforcement objective of towing and storing The Subject Vehicle was consistent with and/or part a NEW BEDFORD's regular practice for taking custody of a vehicle to enforce parking bans due to snow emergencies.

28.     NEW BEDFORD's authorization of SOUTH COAST to detain and dispose of The Subject Vehicle after the enforcement of a parking ban due to snow emergencies was consistent with and/or part of NEW BEDFORD's regular practice for detaining and disposing of a vehicle following the seizure thereof pursuant to its police powers.

6

29.     NEW BEDFORD and SOUTH COAST have no procedure for providing notice at any time to the holder of a security interest or lien in a vehicle that an impacted vehicle has been seized.

30.     NEW BEDFORD and SOUTH COAST have no procedure for affording the holder of a security interest or lien in a vehicle the opportunity to be heard either before or after the time when NEW BEDFORD authorizes seizure, detention and disposal of a vehicle which was taken into custody by NEW BEDFORD and SOUTH COAST in order to enforce a parking ban due to a snow emergency.

**COUNT I**
**Violation of Civil Rights Pursuant to title 42 U.S.C. §1983**
**(Deprivation of Property by Unreasonable Seizure and Without Due Process of Law)**

31.     ALLY realleges and incorporates herein by reference the allegations set forth in the above paragraphs of the complaint.

32.     Prior to NEW BEDFORD and SOUTH COAST's involvement with The Subject Vehicle ALLY held the duly recorded lien and first priority perfected security interest in The Subject Vehicle.

33.     ALLY had the right to have its lien remain recorded on the certificate of title and the immediate right to take possession of The Subject Vehicle pursuant to the terms of ALLY's security interest.

34.     NEW BEDFORD and SOUTH COAST acted under color of state law to deprive ALLY of valuable property interests in The Subject Vehicle in the following ways:

a. NEW BEDFORD and SOUTH COAST did not at any time notify ALLY that NEW BEDFORD and SOUTH COAST had seized, detained or intended to dispose of The Subject Vehicle; and

b. NEW BEDFORD and SOUTH COAST imposed *de facto* a lien on The Subject Vehicle for towing and storage fees;

c. NEW BEDFORD and SOUTH COAST detained and disposed of The Subject Vehicle after it was towed due to a snow emergency without providing any notice of procedures whereby ALLY could protect its lien interest from loss and/or protect the value of its property interest in The Subject Vehicle from loss;

d. NEW BEDFORD and SOUTH COAST authorized sale of The Subject Vehicle to an unidentified third-party without having provided ALLY with any notice of such sale which sale extinguished ALLY's property interest in The Subject Vehicle; and

e. NEW BEDFORD and SOUTH COAST retained the sales proceeds for their own benefit.

35.    NEW BEDFORD and SOUTH COAST's conduct in causing such deprivations violated ALLY's right to Due Process under the Fourteenth Amendment of the United States Constitution because:

a. NEW BEDFORD and SOUTH COAST have no procedures whereby ALLY (or any person with a security interest in a seized vehicle) could have been afforded the opportunity for a hearing before an impartial decision-maker, with adequate notice, where ALLY or any other lienholder could protect its interest by challenging the deprivation of property or by recovering the impacted vehicle;

b. NEW BEDFORD and SOUTH COAST have no procedures for notifying ALLY (or any person with a security interest in a seized vehicle) of methods which could be utilized to recover the impacted vehicle or protects its lien therein from loss; and

c. NEW BEDFORD and SOUTH COAST's detention and authorization for sale and concomitant extinguishment of ALLY's lien in The Subject Vehicle without any notice to ALLY was without any reasonably acceptable justification.

36. NEW BEDFORD and SOUTH COAST's conduct, in seizing The Subject Vehicle without providing any post-seizure notice to ALLY of the initial seizure and in detaining and in authorizing sale of The Subject Vehicle without any notice to ALLY, was unreasonable and violated ALLY's right to be free from unreasonable seizures under the Fourth Amendment to the United States Constitution.

37. NEW BEDFORD and SOUTH COAST knew or should have known that it was unlawful and unconstitutional to (i) deny possession; (ii) seize and detain without warrant or exception to the warrant requirement; (iii) assert a lien for towing and storage fees; (iv) sell the Subject Vehicle; (v) extinguish ALLY's lien and security interest; and (vi) keep the sale proceeds, where notice and a hearing upon the validity of such deprivations had not been afforded to ALLY, a party with duly perfected and recorded property interests in The Subject Vehicle.

38. As a direct and proximate result of NEW BEDFORD and SOUTH COAST's violation of ALLY's rights under the Fourth and Fourteenth Amendments to the United States Constitution ALLY has suffered general and special monetary damages based upon the lost value of The Subject Vehicle, the income stream due to ALLY relative thereto, and the lost sales proceeds and is entitled to relief under 42 U.S.C. §1983 and 42 U.S.C. 1988.

39. The conduct of NEW BEDFORD and SOUTH COAST in not seeking to have a prompt impartial review of its seizure, detention, lien creation, sale, extinguishment of ALLY's lien, and conversion of proceeds of such sale was consistent with and part of the standard procedures and policies utilized by NEW BEDFORD and SOUTH COAST for vehicles seized due to enforcement of parking bans and then disposed of once the parking ban is lifted.

9

40. The conduct of NEW BEDFORD and SOUTH COAST in failing to notify ALLY of NEW BEDFORD and SOUTH COAST's actions relative to The Subject Vehicle is consistent with and part of standard procedures and policies utilized by NEW BEDFORD and SOUTH COAST to seize vehicles while enforcing parking bans due to snow emergencies and then to dispose of said vehicle after the snow ban is lifted.

41. NEW BEDFORD and SOUTH COAST do not maintain any procedural mechanism for providing a notice of seizure to impacted lienholders after a vehicle is seized.

42. NEW BEDFORD and SOUTH COAST do not maintain any procedural mechanism for providing hearings to parties holding security interests or liens in such seized vehicles.

43. The failure by official NEW BEDFORD and SOUTH COAST policy makers to properly train or supervise subordinates regarding the constitutional requirements required in conjunction with the seizure, detention and assertion of charges and liens against vehicles, the sales thereof, and extinguishment of liens therein is contrary to well-settled constitutional law. NEW BEDFORD and SOUTH COAST policy makers' failure to train or supervise subordinates in the face of this law amounts to deliberate indifference to the rights of parties who have security interests or liens in vehicles that are seized, detained, subjected to charges and liened by and sold under the authority of NEW BEDFORD and SOUTH COAST.

44. But for NEW BEDFORD and SOUTH COAST's derivational policy, decisions, practices, and failures described above, ALLY would have had the right to recover and would have recovered The Subject Vehicle without delay or with minimal delay and without incurring liability for further storage charges continually accruing daily.

10

## COUNT II

**Violation of Massachusetts Constitution Article 10**

**(Deprivation of Property Without Due Process of Law) and Violation of**

**Massachusetts Constitution, Article 14 (Prohibition Against Unreasonable Seizures)**

45.    ALLY realleges and incorporates herein by reference the allegations set forth in the above paragraphs of the complaint.

46.    NEW BEDFORD and SOUTH COAST's violations of the Fourteenth Amendment to the U.S. Constitution as aforesaid constitute violations under Massachusetts Constitution, Article 10.

47.    NEW BEDFORD and SOUTH COAST's violations of the Fourth Amendment to the U.S. Constitution aforesaid constitute violations under Massachusetts Constitution, Article 14.

## COUNT III
### Declaratory Relief

48.    ALLY realleges and incorporates herein by reference the allegations set forth in the above paragraphs of the complaint.

49.    An actual controversy has arisen and now exists between ALLY and NEW BEDFORD and SOUTH COAST warranting declaratory relief pursuant to 28 U.S.C. 2201.

50.     ALLY seeks a declaration that NEW BEDFORD and SOUTH COAST's conduct as detailed herein violated ALLY's rights to be free from unreasonable seizures and violated ALLY's Due Process rights under the Constitutions of the United States and Massachusetts.

51.     ALLY seeks a declaration that NEW BEDFORD and SOUTH COAST is liable to ALLY pursuant to 42 U.S.C. 1983 and 42 U.S.C. 1988 for all damages and attorney's fees suffered and incurred by ALLY.

52.     ALLY seeks a declaration that Massachusetts G.L.c. 255, §39A is unconstitutional in so much that it authorizes an unreasonable seizure without warrant or exception to the warrant requirement and deprivation of the property rights of a party holding a security interest and lien in a vehicle without any notice to the secured party/lienholder and without any hearing before a neutral decision maker.

53.     The towing, seizure and detention and sale of motor vehicles, and extinguishment of liens therein when carried out in accordance with Section 39A's provisions, deprives affected vehicle owners and lienholders of property in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Articles 10 and 14 of the Massachusetts Constitution.

54.     Section 39A allows an unreasonable warrantless seizure and does not grant an affected owner or lienholder the right to a hearing with respect to the legitimacy of these acts, either before or after their occurrence. Nor does any other provision of Massachusetts law. ALLY seeks a declaration that Section 39A is so grossly and flagrantly unconstitutional, in that it fails to recognize that a duly perfected security interest and lien in a vehicle is a constitutionally protected property right, that any person of reasonable prudence would be bound to see this flaw.

55.     ALLY seeks a declaration that NEW BEDFORD and SOUTH COAST's conduct constituting the deprivations described herein was null and void ab initio.

## COUNT IV
### Conversion Under Massachusetts Common Law

56.     ALLY realleges and incorporates herein by reference the allegations set forth in the above paragraphs of the complaint.

57.     NEW BEDFORD and SOUTH COAST exercised unlawful dominion and control of The Subject Vehicle to the exclusion of ALLY's rights when it authorized and participated in the creation of a lien for towing and storage fees for The Subject Vehicle which supposedly took priority over ALLY's lien without notice to ALLY.

58.     NEW BEDFORD and SOUTH COAST exercised unlawful dominion and control over The Subject Vehicle to the exclusion of ALLY's rights when NEW BEDFORD and SOUTH COAST seized and detained The Subject Vehicle after NEW BEDFORD and SOUTH COAST towed the vehicle in order to enforce a parking ban due to a snow emergency, all without notice to ALLY.

59.     NEW BEDFORD exercised unlawful dominion and control over The Subject Vehicle when it authorized its agent SOUTH COAST to dispose of The Subject Vehicle under Massachusetts G.L.c. 255 §39A without notice to ALLY.

60.     NEW BEDFORD and SOUTH COAST exercised unlawful dominion and control over the sale proceeds derived from sale of The Subject Vehicle when NEW BEDFORD and SOUTH COAST retained said proceeds and failed to remit said funds to ALLY.

61.    NEW BEDFORD and SOUTH COAST's acts of conversion as indicated caused ALLY actual damages, as well as attorney's fees.


## PRAYERS FOR RELIEF

**WHEREFORE,** ALLY requests that this Court:

a.      Grant judgment in favor of ALLY and against NEW BEDFORD and SOUTH COAST jointly and severally on all causes of action asserted herein.

b.      Declare that NEW BEDFORD and SOUTH COAST violated ALLY's rights to be free from unreasonable seizures and Due Process under the United States and Massachusetts Constitutions.

c.      Declare that Massachusetts G.L.c. 255, §39A is unconstitutional in that it fails to recognize that a duly perfect and recorded security interest and lien in a vehicle is a constitutionally protected property right in violation of the Fourth and Fourteenth Amendments to the United State Constitution.

d.      Award ALLY nominal damages and actual damages.

e.      Award ALLY the cost of prosecuting this action together with attorney's fees pursuant to 42 U.S.C. §1988; and

f.      Declare a permanent injunction against NEW BEDFORD and SOUTH COAST prohibiting the above-described unconstitutional practices.

g.      Award such other and different relief that the Court, in the exercise of its discretion, deems just and proper.

Dated:     Newton, Massachusetts
           July 6, 2021,                              Ally Financial Inc.
                                                      By Its Attorneys
                                                      **Lushan, McCarthy & Goonan**


                                                      By:_/s/   Michael Lushan_____
                                                      Michael Lushan. Esq.
                                                      BBO#307990
                                                      132 Charles Street, Suite 301
                                                      Newton, MA 02466
                                                      617-739-0700
                                                      lushan@lushlaw.com

**ILAW** 553-SC-eps-14 8/18                                    **EXHIBIT**
                                                                    "A"

RETAIL INSTALLMENT SALE CONTRACT
SIMPLE FINANCE CHARGE

Dealer Number _____     Contract Number **24740**

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| JOSE MIGUEL PADILLA 1007 SUMMERLAKE CIRCLE RICHMOND, SC 29939 | CHEYENNE-JAMIL SALAMONE 1007 SUMMERLAKE CIRCLE RICHMOND  SC 29938 COUNTY: BEAUFORT | GRAINGER NISSAN OF BEAUFORT 219 ROBERT SMALLS PARKWAY BEAUFORT, SC 29906 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2019 | NISSAN ALTIMA | 1N4BL4BV1KC130750 | Personal, family, or household unless otherwise indicated below ☐ business ☐ agricultural ☐ N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 1500.00 is |
|---|---|---|---|---|
| 13.24 % | $ 8715.45 | $ 18849.75 | $ 27565.20 | $ 29065.20 |

**WARRANTIES SELLER DISCLAIMS**
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 382.85 | Monthly beginning 06/23/2020 |
| N/A | N/A | N/A |

Or As Follows: **N/A**

**Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
**Spanish Translation:** Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**Late Charge.** If a payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late, with a minimum charge of $7.40. The charge will not exceed $18.50 if you bought the vehicle primarily for personal, family, or household use. We may charge the maximum and minimum late charge dollar amounts as allowed by S.C. Code Ann. 37-1-109 of the South Carolina Consumer Protection Code.
**Prepayment.** If you pay early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**APPLICABLE LAW**
Federal law and the law of the state of our address shown above apply to this contract.

### SERVICING AND COLLECTION CONTACTS
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI Insurance):** If the preceding box is checked, the Creditor requires VSI Insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI Insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI is obtained. If you elect to purchase VSI Insurance through the Creditor, the cost of this insurance is $ **N/A** and is also shown in item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

### NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.    Buyer Signs X _____    Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
**See the rest of this contract for other important agreements.**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

☐ If this box is checked, the following late charge applies to vehicles purchased primarily for business or agricultural use.
If a payment is not received in full within **N/A** days after it is due, you will pay a late charge of $ **N/A** or **N/A** % of the part of the payment that is less.
If this box is not checked, the late charge in the "Federal Truth-In-Lending Disclosures" still applies.

Buyer Initials _____    Co-Buyer Initials _____    67767*1*GNB-FI    05/09/2020  06:04 pm
Non-Authoritative Copy (05200513)                                    LAW 553-SC-eps-14 8/18 v1   Page 1 of 3

**OTHER IMPORTANT AGREEMENTS**

**1.   FINANCE CHARGE AND PAYMENTS**

a.   **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

b.   **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the Amount Financed, and to other amounts you owe under this contract in any order the law permits.

c.   **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d.   **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

e.   **You may refinance a balloon payment.** A balloon payment is a scheduled payment that is more than twice as large as the average of your earlier scheduled payments. If you are buying the vehicle primarily for personal, family, or household use, you may refinance the balloon payment when due without penalty. The terms of the refinancing will be no less favorable to you than the terms of this contract. This provision does not apply if we adjusted your payment schedule to your seasonal or irregular income.

**2.   YOUR OTHER PROMISES TO US**

a.   **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b.   **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c.   **Security Interest.**

You give us a security interest in:

• The vehicle and all parts or goods put on it;

• All money or goods received (proceeds) for the vehicle;

• All insurance, maintenance, service, or other contracts we finance for you; and

• All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

d.   **Insurance you must have on the vehicle.**

You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract.

If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e.   **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3.   IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

a.   **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

b.   **You may have to pay all you owe at once.** If you break your promises (default) we may demand that you pay all you owe at once after we give you any notice the law requires. Default means:

• You do not make any payment when due; or

• You start a proceeding in bankruptcy or one is started against you or your property; you give false, incomplete, or misleading information on a credit application; or you break any agreements in this contract; except that if you bought the vehicle primarily for personal, family, or household use, we will only treat these events as defaults if they significantly impair the prospect of payment, performance, or realization of the collateral.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c.   **You may have to pay collection costs.** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs as the law allows. The maximum attorney's fee you will pay will be 15% of the amount you owe. You will also pay the reasonable expenses we incur in realizing on our security interest as the law allows.

d.   **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you after we give you any notice the law requires. We may only take the vehicle if we do so peacefully without entering into a dwelling used as a current residence. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.

e.   **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

f.   **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney's fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us, unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest rate permitted by applicable law.

g.   **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

67787*1*GNB-FI

Buyer Initials _JAP_   Co-Buyer Initials _CS_

Non-Authoritative Copy [20200612]

**ITEMIZATION OF AMOUNT FINANCED**

1. Cash Price (including $ __N/A__ sales tax and $ __399.75__ closing fee)  $ __15920.75__ (1)
2. Total Downpayment =
   - Trade-in __N/A__
     (Year)   (Make)        (Model)
   - Gross Trade-In Allowance  $ __N/A__
   - Less Pay Off Made By Seller  $ __N/A__
   - Equals Net Trade In  $ __N/A__
   - + Cash  $ __1500.00__
   - + Other __N/A__  $ __N/A__
   - (If total downpayment is negative, enter "0" and see 4J below)  $ __1500.00__ (2)
3. Unpaid Balance of Cash Price (1 minus 2)  $ __14420.75__ (3)
4. Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):
   - A Cost of Optional Credit Insurance Paid to Insurance Company or Companies.
     - Life  $ __N/A__
     - Disability  $ __N/A__  $ __N/A__
   - B Vendor's Single Interest Insurance Paid to Insurance Company  $ __N/A__
   - C Other Optional Insurance Paid to Insurance Company or Companies  $ __N/A__
   - D Optional Gap Contract  $ __850.00__
   - E Official Fees Paid to Government Agencies
     - to N/A  for N/A  $ __N/A__
     - to N/A  for N/A  $ __N/A__
     - to N/A  for N/A  $ __N/A__
   - F Government Taxes Not Included in Cash Price  $ __0__
   - G Government License and/or Registration Fees
     - LICENSE FEE  $ __40.00__
   - H Government Certificate of Title Fees  $ __24.00__
   - I Infrastructure Maintenance Fee  $ __N/A__
   - J Other Charges (Seller must identify who is paid and describe purpose)
     - to N/A  for Prior Credit or Lease Balance  $ __0.00__
     - to SEC PLUS WARRANTY  for SERV.CONT.  $ __3200.00__
     - to SEC PLUS MAINT  for MAINT  $ __300.00__
     - to N/A  for N/A  $ __N/A__
     - to GRAINGER NISSAN OF BEAUFORT for ELT Fee  $ __15.00__
     - to N/A  for N/A  $ __N/A__
     - to N/A  for N/A  $ __N/A__
     - to N/A  for N/A  $ __N/A__
     - to N/A  for N/A  $ __N/A__
     - to N/A  for N/A  $ __N/A__
   - Total Other Charges and Amounts Paid to Others on Your Behalf  $ __4429.00__ (4)
5. Amount Financed (3 + 4)  $ __18849.75__ (5)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before __N/A__, Year __N/A__. SELLER'S INITIALS _____

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit, to obtain certain terms of credit, or to buy the vehicle. A gap contract will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term __72__ Mos.  SEC PLUS GAP
                   Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X _____

Returned Check Charge: You agree to pay a charge of $30.00 if any check you give us is dishonored.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**NOTICE TO RETAIL BUYER: Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.**

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _____  Date __05/09/2020__  Co-Buyer Signs X _____  Date __05/09/2020__

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____  Address _____

Seller signs __GRAINGER NISSAN OF BEAUFORT__  Date __05/09/2020__  By _____  Title _____

Seller assigns its interest in this contract to **ALLY FINANCIAL** (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse  ☒ Assigned without recourse  ☐ Assigned with limited recourse

Seller **GRAINGER NISSAN OF BEAUFORT**  By _____  Title _____

**LAW** FORM NO. 553-SC-eps-14 (REV. 8/18)
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
67787*1*GNB-FI

Non-Authoritative Copy [20200513]

---

Insurance. You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit, unless the box indicating Vendor's Single Interest Insurance is required is checked on page 1 of this contract.
If any insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**
**Optional Credit Insurance**
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both
Premium:
Credit Life $ __N/A__
Credit Disability $ __N/A__
Insurance Company Name __N/A__
Home Office Address __N/A__

CONSUMER CREDIT INSURANCE IS NOT REQUIRED TO OBTAIN CREDIT AND WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL COST. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**
☐ __N/A__  __N/A__
   Type of Insurance  Term
Premium $ __N/A__
Insurance Company Name __N/A__
Home Office Address __N/A__

☐ __N/A__  __N/A__
   Type of Insurance  Term
Premium $ __N/A__
Insurance Company Name __N/A__
Home Office Address __N/A__

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the optional credit insurance and other insurance checked above.
X __N/A__  __N/A__
Buyer Signature  Date
X __N/A__  __N/A__
Co-Buyer Signature  Date
☐ IF CHECKED, THE TERM OF OPTIONAL CREDIT INSURANCE IS LESS THAN THE TERM OF THIS CONTRACT, AS DESCRIBED ABOVE.
X __N/A__  __N/A__
Buyer Signature  Date

THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.

05/09/2020  06:04 pm
LAW 553-SC-eps-14 8/18 v1  Page 3 of 3

EXHIBIT "B"

| | | |
|---|---|---|
| Title # : | 2020384042483 | Title Type : |
| Issue Date : | 05/09/2020 | Lic/Tag/Control # : |

| | |
|---|---|
| VIN: | 1N4BL4BV1KC130750 |
| Vehicle Info: | 2019 NISS |
| Brand code: | |
| Odometer Reading: | 000036480 |
| Date: | 05/30/2020 |
| Status: | |

─Owner information─

| | | |
|---|---|---|
| Owner Information: | JOSE MIGUEL PADILLA | OR |
| Co-Owner: | CHEYENNE JAMIL SALAMONE | |
| Third Owner: | | |
| Owner Address: | 1007 SUMMERLAKE CIR APT 308 | |
| | RIDGELAND, SC 299363162 | |

─Lienholder information─

| | |
|---|---|
| Lienholder: | ALLY FINANCIAL |
| | PO BOX 8132 |
| | COCKEYSVILLE, MD 210308132 |
| 2nd Lienholder Name: | |

| | |
|---|---|
| ELT Sent Date: | 05/30/2020 |
| Lien Type: | |
| Owner Driver License #: | SC |

| |
|---|
| PDP Doc Ref:   50000129933 / 00008   05/05/2021   09:53:45 |